**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JON HANSON, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> BETTER LENDING, LLC, <br><br> Serve registered agent at: <br> Redi Gjojdeshi and/or Varun Soni <br> 152 W. Center Court <br> Schaumburg, Illinois 60195 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Case No.: 1:26-cv-2479 <br><br>     <u>**JURY TRIAL DEMANDED**</u> |

**<u>CLASS ACTION COMPLAINT</u>**

COMES NOW Plaintiff Jon Hanson, individually, and on behalf of all others similarly situated, and through his counsel of record, submits his Class Action Complaint against Defendant Better Lending, LLC, and states:

**INTRODUCTION AND BACKGROUND ON THE TCPA**

1. Plaintiff Jon Hanson ("Plaintiff" or "Hanson") brings this case to protect his privacy rights, namely the right to be left alone from unwanted telemarketing phone calls.

2. Hanson brings this suit to get telemarketers like Better Lending, LLC ("Defendant"), to stop incessantly calling his phone and the putative class members' phones despite the fact Hanson and the putative class members registered their phone numbers on the National Do-Not-Call Registry ("DNC List").

3. Hanson also brings this suit to get telemarketers like Defendant to stop placing telemarketing calls to consumers even though Hanson and the putative class members asked

Defendant or those acting on its behalf to stop calling them and yet, continued to receive telemarketing calls from or on behalf of Defendant. Such consumers are required to be placed on a company's Internal Do-Not Call List upon requesting the calls stop.

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. The TCPA affords special protections for people who registered their phone numbers on the National Do Not Call Registry ("DNC List"). Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the DNC List is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

6. The TCPA also affords special protections for people who request that a company no longer contact them yet continues to receive telephone solicitation calls. The company is required to place the called person on the company's internal do-not-call list ("Internal DNC List"). Specifically, the TCPA provides that each person who receives more than one call on their phone after requesting that the calls stop is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d).

7. Since 2003, persons who register their cell phone numbers on the DNC List are considered to be "residential subscribers" for the purpose of 227(c)(5) and the DNC List. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014,

14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

8. Highlighting the problems of incessant telemarketing phone calls, in 2025 alone, approximately 52.4 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Feb. 17, 2026).

9. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

10. In fact, in 2025 alone, there were over 2.6 million do-not-call complaints to the FTC about unwanted telemarketing calls. Federal Trade Commission, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 6, 2026) *available at*: https://www.ftc.gov/news-events/news/press-releases/2026/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Feb. 17, 2026).

11. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

12.     This Court has subject-matter jurisdiction over the TCPA claims in this action as the TCPA is a federal statute. *See* 28 U.S.C. § 1331.

13.     This Court has personal jurisdiction over Defendant because Defendant is an Illinois Limited Liability Company, has its principal place of business in Illinois, has a registered agent in Illinois, continuously transacts business in Illinois, systematically transacts business in Illinois, places telemarketing phone calls to persons in Illinois, and for the reasons otherwise set forth in this Complaint.

14.     Plaintiff resides in and is a citizen of the State of North Dakota.

15.     Defendant is registered with the Illinois Secretary of State as an Illinois Limited Liability Company with its principal place of business in Schaumburg, Illinois.

16.     Defendant has been in good standing to transact business in Illinois and throughout the United States at all times material to this Complaint.

17.     Venue is proper in this Court as Defendant's principal place of business and registered agent is in this District, because the conduct at issue originated, in part from this District, and for the reasons otherwise stated in this Complaint.

**PARTIES**

18.     Hanson is the owner of a cell phone. His cell phone number is 580-XXX-5594.

19.     Hanson registered his phone number on the DNC List on or about February 28, 2010, to obtain solitude from unwanted telemarketing calls.

20.     Hanson's cell phone number is a personal phone number and not a business line.

21.     The monthly bill associated with Hanson's phone number is issued in Hanson's name, and not in the name of a business.

4

22. Hanson uses his cell phone primarily for residential purposes, such as communicating with friends and family members.

23. Defendant's business is offering consumers mortgage products and services.

24. Defendant's website is www.betterlending.com ("Defendant's website").

25. Defendant's website states that Defendant "offers competitive loan rates and flexible terms" that "are designed to meet the unique needs of every homebuyer."

26. Defendant's website states that Defendant offers "a variety of borrowing options, including . . . Conventional Loans, FHA Loans, VA Loans [and] Jumbo Loans."

27. Defendant's website also states that Defendant offers Home Equity Lines of Credit (HELOC) and other lending and/or mortgage related products and services.

28. Defendant markets its mortgage products and services, in part, through the use of placing telemarketing phone calls.

**DEFENDANT'S INCESSANT TELEMARKETING CALLS TO HANSON**

29. On March 13, 2024, at approximately 4:23 p.m., Hanson received a phone call on his cell phone from Defendant or someone acting on Defendant's behalf. The phone number that appeared on Hanson's phone appeared as having originated from phone number 316-403-0720.

30. On May 13, 2024, at approximately 3:43 p.m., Hanson received a phone call on his cell phone from Defendant or someone acting on Defendant's behalf. The caller said that "Better Lending" was one of their main lenders. The caller said they reached out a few months ago and began mentioning mortgage-related products and asked Hanson a series of questions that related to these mortgage products and services. The phone number appeared on Hanson's as having originated from phone number 316-403-7750.

31.     On May 17, 2024, at approximately 4:24 p.m., Hanson received a phone call on his cell phone from Defendant or someone acting on Defendant's behalf.  The caller identified himself as being with "Better Lending" and that they are located in "Schaumburg, Illinois."  The caller further stated that they called Hanson a few days prior.  Hanson advised the caller that he was not interested.

32.     Despite being on the DNC List and advising he was not interested, Defendant continued to call Mr. Hanson. On April 24, 2025, at approximately 11:09 a.m., Hanson received a phone call on his cell phone from Defendant or someone acting on Defendant's behalf.  The caller said they were offering "free quotes" about mortgages and began asking Hanson a series of mortgage-related questions. The caller then transferred the call and got connected to a voicemail that stated, "You've reached Mike Nasr with Better Lending." The caller then transferred to a person who identified themselves as "Luke" with "Better Lending."  "Luke" then began asking Hanson a series of mortgage-related questions.  "Luke" then advised that their home base is in "Schaumburg" but that they have offices around the country.

33.     Defendant's website includes a page that identifies Defendant's team members.  A person named "Michael Nasr" who is identified as a "Regional Manager." Mr. Nasr's email address is identified as mnasr@betterlending.com and states that his areas of expertise are "home purchase," "debt consolidation" and "real estate investment."

34.     On April 24, 2025, at approximately 3:54 p.m., Hanson received a phone call on his cell phone from Defendant or someone acting on Defendant's behalf.  "Luke" again called regarding Defendant's mortgage-related products and said he had spoken with Hanson earlier. Hanson advised "Luke" he was not interested in Defendant's services.

6

35. On July 30, 2025, at approximately 5:05 p.m., Hanson received a phone call on his cell phone from Defendant or someone acting on Defendant's behalf. The caller said his name was "Jamie Bennett" from "Better Lending" and said he was making a "dry call" and noted that his "regional manager" spoke with Hanson about four months earlier. Hanson told the caller he was not interested and that he should be on Defendant's do-not-call list.

36. On September 15, 2025, Defendant again placed a call to Hanson and tried to sell him its mortgage-related services.

37. Later on September 15, 2025, Hanson received a text message on his phone from Defendant or someone acting on Defendant's behalf. The text message stated:

Card attached / Summary below

Amount - $430k
Rate – 5.25
Payment $3309

\* close mid Oct / no money due
\* skip Nov & Dec / 1st due Jan 2026
\* $100k in-hand + escrow refund + 2 skips

38. Included with the text message was a contact card for a person named "Bert Lebhar." The contact card identified his email address as blebhar@betterlending.com and a website of https://betterlending.com.

39. Mr. Lebhar has a Facebook profile that states he is a "Sales Manager/Senior Mortgage Loan Officer at Better Lending LLC."

40. Mr. Hanson is not currently seeking recovery for this text message but reserves the right to do so in the future. However, this text message further highlights that Defendant was in fact contacting him to solicit business.

7

41. Further highlighting Defendant's flagrant disregard for Mr. Hanson's requests to not be contacted, Mr. Hanson responded to the text message on September 22 by stating, "We're good. Put me on your do not call. Thanks." Mr. Lebhar then responded, "Don't have one."

42. On information and belief, Defendant placed additional calls to Plaintiff which can be identified through discovery.

43. Prior to receiving these calls, Hanson did not provide prior express written consent, or any form of consent, to Defendant or anyone acting on his behalf to call his cell phone; nor did, upon information and belief, the putative class members.

44. Hanson did not provide his phone number to Defendant or anyone acting on its behalf, nor did, upon information and belief, the putative class members.

45. Hanson had no prior business relationship with Defendant before receiving the calls at issue, nor did, upon information and belief, the putative class members.

46. Hanson never inquired of Defendant about any of its services before he received the calls at issue.

47. Hanson was not in the market for mortgage services at the time he received the calls at issue.

48. On information and belief, Defendant or someone acting on its behalf placed phone calls to hundreds if not thousands of persons (*i.e.* putative class members) to persons whose phone numbers were on the DNC List.

49. On information and belief, Defendant or someone acting on its behalf placed phone calls to hundreds if not thousands of persons (*i.e.* putative class members) to persons whose phone numbers should have been placed on Defendant's internal do-not-call list as they, like Hanson, requested to no longer be called.

50. Defendant's conduct violated Hanson's and the putative class members' privacy rights as they were subjected to annoying and harassing calls.

51. Defendant's conduct of calling Hanson and the putative class members intruded upon Hanson's and the putative class members' right to be left alone, and their interest of seclusion.

## DIRECT AND VICARIOUS LIABILITY

52. Without the benefit of discovery, because Defendant disclosed its identity, Hanson assumes Defendant directly placed the calls.

53. However, if discovery reveals that some or all of the calls were made by third-party/parties on behalf of Defendant, then Defendant is vicariously liable for those calls.

54. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

55. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and

immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

56. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

57. If Defendant directly placed the calls at issue to Hanson, Defendant is directly liable for those calls.

58. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Hanson and only known to Defendant.

59. In the event, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

60. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting leads and/or deriving profit from sales initiated by unlawful telemarketing phone calls.

61. Defendant controlled or had the right to control the marketing activities of those acting on its behalf. Among other things, the calls received by Hanson from Defendant were similar in script and the callers asked similar questions and made similar comments.

62. Defendant acted as a principal to telemarketing agent(s) whose identity or identities are unknown at this time.

63. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

64.     For the counts identified below, if Defendant directly placed the call(s), it is directly liable. In the alternative, to the extent any call(s) were made by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful calls.

**Class Allegations**

65.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this lawsuit as a class action on himself, and all others similarly situated. This action satisfies the requirements of Rule 23(a) and (b).

66.     Plaintiff seeks to represent the following classes:

**DNC List Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) to whom Defendant (or someone acting on its behalf) placed two or more calls during a 12-month period; (2) where the calls were made in connection with a campaign to solicit Defendant's products or services; and, (3) whose number was registered on the DNC List for more than 30 days at the time the calls were received; (4) where the phone number is registered to an individual, rather than a business.

**Internal Do-Not-Call Class:** All persons in the United States who from four years prior to the filing of this action through the date a class is certified: (1) Defendant (or someone acting on its behalf) called more than one time, (2) within any 12-month period, (3) marketing products and services, and, (4) after the person requested that Defendant (or someone acting on its behalf) stop calling.

67.     Plaintiff reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

68.     The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on its behalf.

69.     Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

11

70. On information and belief, Defendant has called and continues to call persons whose numbers are registered on the DNC List and who should also be on Defendant's Internal DNC List. It is reasonable to expect that Defendant will continue to place such calls absent this lawsuit.

71. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

a. Whether Defendant placed calls to persons on the DNC List in violation of 47 U.S.C. § 227(c) and the TCPA's corresponding regulations;

b. Whether Defendant placed calls to persons who should have been placed on Defendant's Internal DNC List in violation of 47 U.S.C. § 227(c) and the TCPA's corresponding regulations;

c. Whether Defendant exercised valid methods of obtaining written consent before making calls to consumers;

d. If Defendant did not directly place the calls at issue, whether an agency relationship exists between Defendant and its telemarketing vendor(s);

e. Whether Defendant ratified the conduct of vendor(s)/agent(s);

f. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,

g. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

72. Plaintiff's claims are typical of the claims of the proposed class members because their claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

73. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the proposed classes. Plaintiff's interests do not conflict with the interests of the proposed classes he seeks to represent. Plaintiff has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

74. Plaintiff's counsel will vigorously litigate this case as a class action, and Plaintiff and his counsel are aware of their responsibilities to the putative members of the classes and will discharge those duties.

75. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed classes, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

76. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

77. Questions of law and fact, particularly the propriety of placing calls to phone numbers on the DNC List, predominate over questions affecting only individual members.

78. Questions of law and fact, particularly the propriety of placing calls to phone numbers who should have been placed on Defendant's Internal DNC List, predominate over questions affecting only individual members.

79. Defendant has acted or refused to act on grounds that apply generally to the classes, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the classes as a whole.

**Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) *et seq.* (National DNC List Violations – DNC List Class)**

80. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

81. The TCPA provides that is a violation of the law for a person whose phone number is registered on the DNC List to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(2).

82. The penalty for each call placed in violation of the TCPA's restrictions on calling phone numbers registered on the DNC List is up to $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

83. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

84. By making calls to Plaintiff and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

85. Defendant or those acting on its behalf knew or should have known that Plaintiff's and the putative class members' phone numbers were registered on the DNC List.

86. Defendant or those acting on its behalf willfully violated the TCPA when placing the calls to Plaintiff's and the putative class members' cell phones.

87. Plaintiff and the putative class members are entitled to damages of up to $500.00 per violation for each call made by Defendant or those acting on its behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Jon Hanson, individually, and on behalf of all others similarly situated, request that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23, certifying the DNC List class, appointing Plaintiff as the class representative, and appointing Plaintiff's counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the DNC List Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c. Enter a judgment in favor of Plaintiff and the DNC Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d. Enter judgment in favor of Plaintiff and the DNC Class for all applicable pre-judgment and post-judgment interest amounts;

e. Enter judgment in favor of Plaintiff and the DNC Class for all costs; and,

f.        Award Plaintiff and the DNC Class members such further and other relief the Court deems just and appropriate.

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.*
### (Internal Do-Not-Call List Violations – Internal DNC Class)

88.        Hanson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

89.        The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover up to $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

90.        The regulations prescribed under Section 227(c) require companies like Defendant, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that person or entity" (*i.e.* to be placed on the Defendant's internal do-not-call list) *See* 47 C.F.R. § 64.1200(d).

91.        These procedures must meet several minimum standards, including, but not limited to:

(1) *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the

16

date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

**(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

92. Defendant failed to implement these minimum standards by repeatedly calling or having its representatives call Hanson and the putative class members after Hanson and the putative class members requested that Defendant stop calling them.

93. By calling Hanson and the putative class members after their numbers should have been placed on Defendant's internal do-not-call list, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

94. Defendant knew or should have known that Hanson and the putative class members did not wish to be called and wished to be placed on Defendant's internal do-not-call list but continued to call them.

95.     Hanson and the putative class members are each entitled to up to $500 per violation of Section 227(c) of the TCPA (Internal Do-Not-Call Registry violations only), and up to $1,500.00 for every violation determined to be willful.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Jon Hanson, individually, and on behalf of all others similarly situated, request that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23, certifying the Internal DNC List class, appointing Plaintiff as the class representative, and appointing Plaintiff's counsel as class counsel;

b.      Enter judgment in favor of Plaintiff and the Internal DNC List Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c.      Enter a judgment in favor of Plaintiff and the Internal DNC Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.      Enter judgment in favor of Plaintiff and the Internal DNC Class for all applicable pre-judgment and post-judgment interest amounts;

e.      Enter judgment in favor of Plaintiff and the Internal DNC Class for all costs; and,

f.      Award Plaintiff and the Internal DNC Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Jon Hanson demands a jury trial.

Dated:  March 5, 2026

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts #6302857IL
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700
CRoberts@butschroberts.com

*Attorneys for Plaintiff*